In the Matter of the Judicial Settlement of the Account of Proceedings of the UNITED STATES TRUST COMPANY OF NEW YORK, as Trustee under the Last Will and Testament of CLINTON W. BIRD, Deceased.

WALLIS. C. BIRD and Others, Appellants; UNITED STATES TRUST COMPANY OF NEW YORK, as Trustee, and Others, Respondents.

First Department, May 29, 1925.

Trusts — testamentary trusts — apportionment of extraordinary stock dividends between principal and income — apportionment must be made as of date that stock was turned over to trustee by executor and not as of date of death of testator.

Under a testamentary trust, the principal of which is composed of the residuary estate of the testator and includes corporate stock, extraordinary dividends thereon declared after the trust fund was turned over to the trustee must be apportioned between principal and income as of the date the stock was delivered to the trustee by the executor and not as of the date of the death of the testator, on which date the trust was created and established, and this is true notwithstanding the executor within one month after the death of the testator paid over to the trustee the income from the funds which were subsequently transferred to the trustee, and continued to pay such income to the trustee until the principal fund was transferred to it.

APPEAL by Wallis C. Bird and others from a decree of the Surrogate's Court of the county of New York, entered in the office of said Surrogate's Court on the 15th day of September, 1924, amending its decree dated June 30, 1924, judicially settling the account of the trustee.

*Guggenheimer, Untermyer & Marshall* [*Irwin Untermyer* of counsel; *Samuel Untermyer* with him on the brief], for the appellant Wallis C. Bird.

*Smith & Kieser* [*Carl E. Kieser* of counsel; *Arthur B. Smith* with him on the brief], for the appellants Ada V. Bird and others.

*Andrew S. Hamersley* [*J. Daniel Dougherty* of counsel], for the appellants Marie Louise B. Fisher and another.

*James J. Walker*, special guardian for Walter G. Bird and others, appellants.

*John J. Robinson*, for the respondent Lena Bird.

*Satterlee & Canfield* [*Frederick C. Bangs* of counsel; *George F. Canfield* and *Stephen H. Hammond* with him on the brief], for the respondent United States Trust Company of New York, trustee.

BURR, J.:

This proceeding was brought in the Surrogate's Court of New York county by the United States Trust Company of New York, as trustee under the last will and testament of Clinton W. Bird, deceased, for the judicial settlement of its account as said trustee, covering the period from February 15, 1922, to June 30, 1923. The account was judicially settled by a decree of the Surrogate's Court of New York county, dated September 15, 1924, which by stipulation amended its decree of June 30, 1924, and it is from this amended decree that this appeal is taken.

The only question raised before the surrogate and again presented by this appeal is the proper and equitable apportionment, between principal and income, of certain stock and extraordinary cash dividends, received during the accounting period.

The decedent died on December 23, 1916, and was survived by his widow, Lena Bird, and one child, a son, Wallis C. Bird. The last will and testament of the deceased was admitted to probate by the Surrogate's Court of New York county on January 15, 1917, and letters testamentary thereon were issued to Constant M. Bird, the executor named therein.

The will in substance provides that after the payment of debts, expenses and certain specific legacies, the residue and remainder of the estate be given to the present trustee named therein, to invest and collect the rents, issues and profits therefrom, with permission to the widow and son to use and occupy certain real property. The trustee is directed to pay over one-third of the net income from the trust fund annually to the widow until her death, remarriage or until the son shall reach the age of thirty

years, whichever shall first happen.  Substantial provision is made for the widow in the event of her remarriage, but she has not remarried, so that this provision is not now material.  The trustee is further directed to apply from the income $2,500 a year for the benefit of the son until he becomes eighteen years of age, at which time his payments of income are increased to $3,000 per year, and the balance of the income is directed to be accumulated for the benefit of the son.  Upon the son attaining his majority the trustee is directed to pay over to him all accumulated income, and from that time and until he attains the age of thirty years the annual income not disposed of is to be paid to the son.  Upon his attaining the age of thirty years, the trustee is directed to pay over to the son one-half of the corpus of the trust fund, reserving a sufficient amount, however, to produce an income of $15,000 a year, which is to be paid to the testator's widow during her life or until her remarriage, and in the event of her remarriage this annuity of the widow is reduced to $5,000.  When he arrives at the age of thirty-five years, the son is to receive the balance of the estate over and above the amount necessary to produce the annuity to be paid to the widow.  The son became of age on March 30, 1921, and was, therefore, twenty-three years of age at the time this proceeding was commenced.

The other parties to this proceeding are all contingent remaindermen.  As to some of them, their interests are contingent upon the death of the son, unmarried, before reaching the age of thirty-five years, and as to the others, upon any portion of the trust fund remaining undisposed of otherwise.

It appears that the executor, Constant M. Bird, on March 25, 1918, delivered to the trustee, United States Trust Company of New York, a number of corporate bonds as part of the capital of the trust estate; and that on June 24, 1918, he delivered a number of corporate stocks to the trustee, constituting substantially the balance of the principal of the trust fund.  Among the stocks so delivered by the executor to the trustee on June 24, 1918, were those on which the trustee received substantial stock and extraordinary cash dividends during the accounting period under review.  These dividends have been treated and carried by the trustee as principal in its account.  To this the widow and son filed objections, claiming that there should have been an apportionment between principal and income of these extraordinary dividends.  The widow contended that so much of these extraordinary dividends as represented the distribution of accumulated earnings of the companies since December 23, 1916, the date of the testator's

death, should be distributed as income, and that she was entitled to one-third thereof. The son, who was both a beneficiary and a remainderman, and the other contingent remaindermen contended that only so much of these dividends as represented the distribution of accumulated earnings of the companies since June 24, 1918, the date on which the particular securities were delivered by the executor to the trustee, should be considered as income to be distributed as provided in the will.

In other words, the question presented to the surrogate was whether these extraordinary dividends should be apportioned between principal and income as of the date of the testator's death, or as of the date when the stocks were delivered by the executor to the trustee. The surrogate held that this apportionment should be made as of the date of the testator's death.

It is agreed and conceded by all the parties hereto, both beneficiaries and remaindermen, that there must be an apportionment and allocation of the extraordinary dividends in question between principal and income, in accordance with the rule laid down by the Court of Appeals in *Matter of Osborne* (209 N. Y. 450). At page 477 the opinion in that case reads: " Extraordinary dividends, payable from the accumulated earnings of the company, whether payable in cash or stock, belong to the life beneficiary, unless they entrench in whole or in part upon the capital of the trust fund as received from the testator or maker of the trust or invested in the stock, in which case such extraordinary dividends should be returned to the trust fund or apportioned between the trust fund and the life beneficiary in such a way as to preserve the integrity of the trust fund." And at page 484 it is again stated: " The proposition decided by us in this case is, that in all cases of extraordinary dividends, either of money or stock, sufficient of the dividend must be retained in the corpus of the trust to maintain that corpus unimpaired and the remainder thereof must be awarded to the life beneficiary."

While all the parties herein agree that there must be an apportionment of the extraordinary dividends in accordance with the rule of the *Osborne Case* (*supra*), they are at issue as to the date at which this apportionment should be made. The widow contends that the proper date is December 23, 1916, the date of testator's death. The son and the contingent remaindermen ask that the allocation be made as of June 24, 1918, the date on which the securities were delivered to the trustee by the executor. While the *Osborne* case clearly and definitely sets forth the rule for the apportionment, it does not find or determine the particular date which is to be taken to make the computations as between

income and principal, which is the only question presented by this appeal.

This court, however, with the *Osborne* case before it and following what it believed to be the rule set forth in that case, has specifically passed on this very question in *United States Trust Co.* v. *Heye* (181 App. Div. 544), which also was an accounting proceeding in which one of the questions presented to the court was the date to be taken in making the apportionment of dividends as set forth in the *Osborne* case. There, as in this case, the life beneficiaries contended that the apportionment should be made as of the date of the testator's death, while the trustee claimed that the proper date to be taken was the date on which it received the securities from the executrix. This court there held that the proper date was that on which the securities actually came into the hands of the trustee. At the bottom of page 567 and continuing on page 568 in the majority opinion of this court written by Mr. Justice SHEARN, the very question presented by this appeal was expressly decided as follows: " One final question remains, namely, the dates to be taken for making the calculations necessary for the apportionment of the dividends declared by the former subsidiary companies of the Standard Oil Company of New Jersey. There are two dates to be determined: (1) The date of the creation or establishment of the trust, as to which the book value of the securities constituting the principal must be computed to ascertain the original intrinsic value of the shares in the several companies; and (2) the date to be taken for the purpose of ascertaining whether the capital of the trust will be impaired to any extent by extraordinary dividends declared. The life beneficiaries argue that the first date taken should be the date of the testator's death in February, 1899. The trustee claims and the referee has found that the first date should be May 10, 1899, upon which date it is agreed that the trustee received the securities from the executrix. We agree with the referee that the correct date to be taken is May 10, 1899, when the securities came into the hands of the trustee. This is indicated by Judge CHASE in *Matter of Osborne* (p. 485)."

On appeal to the Court of Appeals the determination of the Appellate Division in the *Heye Case* (*supra*) was in some respects modified (224 N. Y. 242). This modification, however, in no way affected the question of the date as to which it had been decided by this court that the apportionment should be made. This is clearly shown by the last paragraph of the opinion of the Court of Appeals (at p. 263): " The judgment of the Appellate Division should be modified to the following extent: Eleven twenty-fifths

of the stock of the Standard Oil Company (California) is apportioned to capital, and fourteen twenty-fifths to the life beneficiaries; all the stock of the Standard Oil Company (Nebraska) is apportioned to capital; the shares of stock in the Illinois Pipe Line Company and the Prairie Pipe Line Company should pass to income and the life beneficiaries. In all other respects the judgment of the Appellate Division should be affirmed, without costs to either party in this court."

The same question was considered by this court and by the Court of Appeals in *Macy* v. *Ladd* (182 App. Div. 216; 227 N. Y. 670), which arose out of a somewhat similar state of facts as those disclosed in the *Heye Case* (*supra*), and where it is now contended by appellants the conclusions reached in that case were reaffirmed. The court there said: "The general principles governing this distribution were decided by this court in the case of *U. S. Trust Co. of N. Y.* v. *Heye* (224 N. Y. 242, modifying 181 App. Div. 544), and it is needless to restate them. While it is urged that the evidence is not identical, the history of the various stocks is essentially the same. It is difficult to reach different conclusions in two cases so closely connected. The decision of this court in the *Heye* case had not been announced when the Appellate Division decided the case at bar. The latter court, therefore, followed its own decision in the *Heye Case* (181 App. Div. 544), which has since been modified by this court, and it is now necessary to follow such modifications here so far as the facts are the same, and make other modifications based on the fact that the trust in this estate was created some seven years before the trust in the *Heye* case.

"The court has adopted March 23, 1892, as the date when the trust was set up."

It would seem, however, that in the *Macy* case the court held the trust was not created at the death of the decedent for the good and sufficient reason that, according to the provisions of the will, the trust was to be created when the decedent's youngest child attained majority. The court accordingly held that the trust was created on the date specified, March 23, 1892, although the trust securities it appears were not segregated until March 16, 1893.

In *Bourne* v. *Bourne* (209 App. Div. 419; affd., 240 N. Y. 172) this court took the date of the testator's death as the determining date for the apportionment of extraordinary dividends between income and capital accounts.

In the instant case it appears from the executor's account that on March 25, 1918, the executor delivered to the trustee certain

bonds, and later on June twenty-fourth, the same year, the executor delivered to the trustee certain stocks which formed the corpus of the said trust. The stocks so delivered included, among others, the stocks upon which the extraordinary dividends, the apportionment of which is here in question, were declared and paid. The executor's account shows also that on January 29, 1917, within about one month after the testator's death and eighteen months before the trust securities were actually delivered to the trustee, the executor made a payment of income to the trustee (the accounting party in this proceeding), for the account of the life beneficiaries, and that such payments of income to the trustee for the benefit of said life beneficiaries were continued monthly thereafter down to and including June 24, 1918, during which period the income so paid amounted to $170,000.

The trust here created was a trust of all the rest, residue and remainder of the property. That residuary estate consisted of cash, bonds and stocks.

To leave the question of the date of the creation of the trust to the haphazard or intentional selection of the executor of the estate rather than to the intention of the testator would be, it seems to me, to put into the hands of the executor the power to determine the portions of the trust estate to be allocated to the life beneficiaries and the remaindermen, a power which the testator never intended the executor to have.

I am inclined to the belief that this trust was created. and established at the death of the testator, and 'that the intermittent delivery at different times by the executor of securities belonging to the testator could in no way affect the date of the creation of the trust itself.

While, as has been stated above, the Court of Appeals in *Matter of Osborne* (*supra*) held that extraordinary dividends are to be apportioned between life beneficiaries and remaindermen and that such apportionment shall be made as of the date of " the creation of the trust," the court unfortunately in using that expression did not define its meaning or plainly and explicitly state that the date of death was the proper date to take as a basis for the necessary computation.

A critical examination of the decision of the Court of Appeals in *Matter of Osborne* (*supra*), and a careful checking up of the mathematical calculations prescribed as necessary to accomplish the result, contained in the opinion of Judge CHASE on the motions to amend remittitur (p. 485), would seem to indicate that the date of death was in fact taken as the date of the creation of the trust in that case. In view, however, of the express determination

of this court in *United States Trust Co.* v. *Heye* (181 App. Div. 544; affd., 224 N. Y. 242) of the identical and only question raised on this appeal, I feel constrained to hold that the proper date for making the apportionment herein is June 24, 1918, when the securities were delivered by the executor to the trustee, and not the date of the testator's death, as found by the surrogate.

The decree of the surrogate should be reversed, with costs to appellants, in so far as it decides that the apportionment of the extraordinary dividends should be determined as of the date of the testator's death.

CLARKE, P. J., DOWLING, MERRELL and McAVOY, JJ., concur.

CLARKE, P. J. (concurring):

I am of the opinion that in this case the date of the testator's death, at which time the trust was created by the terms of the will, should be the date for making the apportionment herein. As it seems, however, that the Court of Appeals by the affirmance of the *Heye Case* (224 N. Y. 242) has taken the date of the delivery of the securities by the executor to the trustee as the proper date, I concur.

Decree reversed, with costs to appellants, in so far as it decides that the apportionment of the extraordinary dividends should be determined as of the date of the testator's death. Settle order on notice.