Joseph A. Cox, S.
The accounting trustees received from the executors shares in the following investment companies: Boston Fund, Inc., Massachusetts Investors Growth Stock Fund, Inc., Massachusetts Investors Trust, and State Street Investment Corp. It is conceded that each of these companies has qualified as a regulated investment company under the provisions of the Internal Revenue Code (§ 851 et seq.; U. S. Code, tit. 26, § 851 et seq.), and that, as a consequence, each is required during each taxable year, to distribute to its shareholders as dividends, 90% or more of its net income. (Internal Revenue Code, § 852, subd. [a], par. [1]; U. S. Code, tit. 26, § 852, subd. [a], par. [1]; Alexander’s Federal Tax Handbook, 1958, p. 799-800.) The petition of the accounting trustees alleges that, from time to time, these investment companies gave their shareholders “ the option of electing to take capital gains distributions in either cash or stock of [the] investment trusts declaring dividends * * *, such stock being capital shares of the investment trusts, and the trustees exercised their option from time to time by taking stock instead of cash and distributed said stock to the income beneficiaries.” The special guardian of infant remaindermen of the trusts objects to all such distributions to the income beneficiaries.
The testator was a citizen of the United States -and a resident of Nassau, Bahama Islands. His will was probated at his domicile and, in accordance with the terms of section 138 of the Surrogate’s Court Act was probated -also in New York, where most -of Ms assets were located. Letters of fruste-esMp were ■issued by this court in accordance with section 171 of the Surrogate’s'Court Act, and the trustees have proceeded to admimster the trusts 'here. The testamentary plan is contained in a will and four codicils. The will had given to the trustees uncon *202 trolled discretion to determine whether stock dividends and subscription rights shall be deemed principal or income, but that discretion was revoked by the fourth codicil, which substituted the following provision: “I direct that any and all cash dividends, except liquidating dividends, upon shares of stock held in my estate or in any trust created by this my Will, whether regular, ¡special or extraordinary dividends and including those received on preferred stock on account of accumulations and on stock of a corporation owning or controlling wasting assets, shall be deemed income and that any and all dividends payable in stock of the corporation declaring same shall be deemed principal.” It will be noted that the will does not mention explicitly dividends that are payable, at the option of the trustee, in either cash or stock.
The will contains no explicit direction that the law of New York is to govern its construction. There are references to the “ Laws of the State of New York ” in the paragraph in which the trustees, having been given discretionary powers of investment, are dispensed from the necessity of following the New York statutes governing investment by fiduciaries, and also in the provision which dispenses them from the obligation to file a bond or other security “regardless of residence within or without the State of New York at any time or from time to time.” These references indicate the testator’s realization that New York law might govern his estate administration to some extent, because of the presence of his assets here. They do not constitute an explicit invocation of New York law as the governing law (cf. Decedent Estate Law, § 47). On the contrary, every reference to New York law is a dispensation from its obligations. However, counsel seem to be agreed that New York is the governing law and that the general plan of this will, the location of the testator’s assets and other considerations, such as possible international monetary restrictions, indicate that it was the testator’s understanding and purpose that New York law would govern except where otherwise explicitly provided.
The so-called Massachusetts rule as to the allocation of dividends paid on corporate shares seems now to be the prevailing rule. It has been adopted in the Restatement (Trusts [1948 Supp.], § 236) and in the Uniform Principal and Income Act (§ 5). Under that rule, dividends declared out of earnings payable otherwise than in the shares of stock of the corporation itself constitute income; dividends payable in newly issued shares of the corporation itself are principal; rights to sub *203 ■scribe to the shares or securities of the corporation are likewise principal; dividends which the trustee has the option of receiving either in cash or in the shares of the declaring corporation, are considered as cash dividends and are deemed income, irrespective of the choice made by the trustee. (Restatement, Trusts, § 236, subd. [c]; Uniform Laws Ann., Yol. 9B, Principal and Income, § 5, subd. 1; 3 Scott, Trusts [2d ed.], pp. 1821-1822.) A testator may, of course, modify these rules by his will or he may substitute entirely different directions to guide his trustee.
New York had originally allocated all dividends based on earnings to income (Equitable Trust Co. v. Prentice, 250 N. Y. 1, 9 and cases cited), but later modified that rule so as to apportion stock dividends between principal and income in a manner which the Court of Appeals believed would best promote the presumed intention of the testator (Matter of Osborne, 209 N. Y. 450; Equitable Trust Co. v. Prentice, supra, p. 8). It finally adopted by statute the Massachusetts rule in respect of dividends payable in the stock of the corporation declaring the dividend (Personal Property Law, § 17-a; L. 1922, ch. 452). The New York statute does not by its terms affect the allocation of other dividends. Hence it continues to apply the rules formulated by the courts that: ordinary dividends, regardless of the time of accumulation of the surplus out of which they are payable, belong to the income beneficiary; extraordinary cash dividends belong to the life beneficiary ‘ ‘ unless they entrench in whole or in part upon the capital of the trust fund as received from the testator * * * or invested in the stock ”, in which case they must be apportioned (Matter of Osborne, supra, p. 477) and rights to subscribe to stock and the proceeds of sale of such subscription rights belong to principal (United States Trust Co. v. Heye, 224 N. Y. 242, 262-263). By statute, dividends payable in newly issued shares of the corporation itself are principal (Personal Property Law, § 17-a). It will be noted that with the possible exception of the rule relating to extraordinary cash dividends (3 Scott, Trusts [2d ed.], p. 1816), the New York rules are substantially in accord with the rules generally prevailing.
Only two decisions in New York appear to involve a distribution wherein the trustee had the option of receiving cash or stock (Kellogg v. Kellogg, 166 Misc. 791, affd. on opinion below 254 App. Div. 812; Matter of Hurd, 203 Miscx. 966). In both cases, as in the pending case, the will directed that all stock dividends be regarded as principal. Matter of Hurd dealt with *204 one of the very investment companies involved herein. The other decision dealt with a totally different corporation, but one which gave its shareholders the option in a particular instance to receive stock or cash. In both cases, the court held that such a dividend is not a true stock dividend even if the holder elects to take the stock, hut is an ordinary dividend distributable to the income beneficiary. In Kellogg v. Kellogg, Judge Swift said (p. 792): “A stock dividend is declared only by the directors, and, therefore, it cannot be that the Character of a dividend is to be determined by the actions of the stockholders. * * * Moreover, this dividend Was paid not out of surplus but out of profits made during the current year, and it has none 'of the other usual attributes of a stock dividend. It was not simply a dilution of the existing shares, but it was an actual distribution of the property of the corporation to those who elected to take cash ”.
It is not disputed in the pending case that the distributions by the investment companies were made from current income. Indeed, it is assumed by all counsel that the distributions undoubtedly represent 90% or more of the aggregate net profits of the respective companies and that they were, derived from interest and dividends on the fund’s securities and from the net realized capital gains.
The fact that the distributions represented in part earnings on invested assets and in part gains realized on 'the sale of securities, would nlot, under the New York decisions, affect the allocation of cash dividends. In the only reported cases in which the issue has 'been decided thus far, cash dividends paid by investment companies have been held to constitute income whether or not the earnings which are distributed were derived from interest and dividends or from capital gains (Matter of Byrne, 192 Misc. 451; Matter of Bruce, 192 Misc. 523). These decisions have evoked both criticism (88 Trusts and Estates, p. 160; id., p. 529) and support (id., p. 280). The conflicting opinions o-n the matters therein decided arise from equally conflicting views of the nature of .such an investment. The. decisions regard the purchase of shares of 'an investment company as an investment of estate funds that is not essentially different from the purchase of any other stock corporation isihares. They treat the distributions as no different, in legal result from the dividends paid by other corporations. Those Who adopt the contrary view look upon a purchase of investment company shares, particularly those of mutual investment companies, as something akin to the retention of an agent or *205 investment counsellor. Under that concept, the company acts for the trustee in investing and managing the trust funds, and the trustee treats the operations of the mutual investment company’s funds just as if the trustee himself performed his part of these operations. (See Ewart, Mutual Fund Dividends, 95 Trusts and Estates, p. 1025.)
We need not, at the moment, concern ourselves with such fundamental questions of policy, nor need we seek to formulate new rules for treatment of dividends of investment corporations and mutual investment companies. While the Legislature of this State has authorized fiduciaries generally to purchase shares of stock of corporations whose shares are “ fully listed and registered upon an exchange registered with the securities and exchange commission as a national securities exchange ’ ’ (Personal Property Law, § 21, subd. 1, par. [m]), it has consistently refused to assent to the idea that a fiduciary may delegate its investment powers to an institution not supervised by the Legislature and not directly organized for handling fiduciary funds (see legislative bills: Sen. Int. No. 2951, Pr. No. 3173 [1958 Sess.]; Sen. Int. No. 2018, Pr. No. 2111 [1957 Sess.] ; Sen. Int. No. 375, Pr. No. 375 [1956 Sess.]; Sen. Int. No. 2850, Pr. No. 3031 [1955 Secs.]; Sen. Int. No. 2522, Pr. No. 2687 [1954 Sess.]). A testator, of course, may grant broader authority. Trustees may be authorized to retain investments of the testator and to use their own discretion in making new investments. The will which grants such authority may also direct the trustees how to deal with the respective income and principal beneficiaries. If the Legislature of this State shall hereafter grant general authority to make such investments or to delegate investment powers, we may fairly assume that it will encompass that grant of power with suitable siafeguards (see L. 1954, ch. 619), and will 'lay down such policies for the guidance of fiduciaries as are necessary.
We, therefore, find that the reported decisions in New York support the general rule that dividends payable in cash or stock, at the option of the trustees, are considered as cash dividends and are payable to the income beneficiary unless the will contains a different direction. Those which have directly ruled upon that question have so held; those which hold that cash dividends go to the income beneficiary even if they represent capital gains earned by the company, indirectly support the other oases. The trustees herein have relied upon these authorities. This court believes that the rule announced in these oases is consonant with the policy of this State as formulated by the *206 Legislature, is in accord with the rule generally prevailing, and is in the best interests of estate beneficiaries.
The option granted to the trustee to receive stock or cash cannot reasonably be regarded as giving him discretion to distribute the dividend among the beneficiaries in whatever way he chooses. (Davis v. Jackson, 152 Mass. 58.) If the will should bestow such discretion upon him, that is a different matter. However, the will of this testator, as we have seen, explicitly withdrew such a grant of authority. In the absence of such discretion, the dividend must be regarded as payable to one beneficiary or another under a fixed and definitive rule, or it must be apportioned among them on an equitable basis.
Much may be said in favor of the logic, fairness and equity of apportioning all dividends in accordance with the origin of the surplus out of which they are paid. However, the rule had its disadvantages from the standpoint of economic estate administration, and insofar as stock dividends are concerned, it has been abandoned even in the jurisdiction which gave the rule its name (42 Cornell L. Q. 595, 600). The rule of convenience and simplicity (Minot v. Paine, 99 Mass. 101, 108) may not accomplish in all cases precisely what the testator had in mind when he created the trust, but by furnishing a definitive guide to the trustee, it avoids litigation, expedites the distribution of ■the income and in this way benefits the trust generally. The Legislature has discarded the rule of apportionment of stock dividends for trusts thereafter cre'ated (Personal Property Law, § 17-a), and the courts should not seek to perpetuate the old rule of apportionment by creating new fields for its operation. If there must be one rule that applies regardless of the choice made by the trustee, the decisions which allocated all cash dividends to income regardless of the origin of the surplus out of which they are paid, point for us the conclusion in this case. If we are to avoid new rules of apportionment of dividends, then we must treat all distributions of earnings as allocable to income, as did the cited cases.
The court is, therefore, of the opinion that under the law of New York, dividends payable out of annual earnings of the corporation, in stock or cash at the option of the shareholder, are deemed cash dividends, regardless of the manner in which the trustee shareholder elects to receive them. When the will of this testator is read against the background of that law, it is evident that he has made no contrary direction in his will, and that the general rule fits within the framework of his testamentary plan. The rule which is operative in the absence of a contrary direction is, therefore, applicable to this case.
*207 Thus far we have proceeded, as have counsel, on the theory that the testator intended New York law to govern the construction of his will. Counsels’ assumptions are based, in part, upon factors not contained fully in the present record and it is therefore neither necessary nor proper to make any definitive ruling upon that point at this time. Moreover, the rule governing decision of the issue now before the court would not be different if we were to look to the law of the domicile. “ The common law of England, in all cases where the same hath not been altered by any of the Acts or Statutes enumerated in the schedule to this Act or by any Act [with exceptions not here pertinent] is, and of right ought to be, in full force within the Colony, as the same now is in that part of Great Britain called England.” (Statute Law of the Bahama Islands [rev. ed.], 1929, Vol. 1, ch. 7, p. 65.) The Trustee Act of 1893 (56 and 57 Victoria, ch. 53; Statute Law of the Bahamas [rev. ed.], 1929, Vol. 1, ch. 80) appears to be in force in that jurisdiction and does not explicitly deal with apportionment of dividends.
Under English law an option to a shareholder to take his dividend in cash or in stock does not, in and of itself, determine the character of the dividend, but the court must decide from the corporate action as a whole whether the profits dealt with are or are not capitalized (Matter of Evans [1912] 1 Ch. 23; Matter of Taylor [1926] Ch. 923; Bouch v. Sproule [1887] 12 App. Cas. 385; 29 Halsbury’s Laws of England [2d ed.], p. 650). The central point in these cases is the nature of the corporate transaction. ‘ ‘ Was the scheme intended by the company to result in the transfer of the amount or part of the amount standing to the credit of the reserve fund to the payment of new capital to be distributed amongst shareholders, or was it merely an ordinary distribution of dividends out of the reserve fund, leaving it a matter of pure choice, with regard to which the company expressed no desire at all, as to how it should be applied?” (Matter of Evans, supra, p. 32.) In the oases where the distribution was held to be a capitalization of earnings, the corporation held out in form an option to the shareholder, but in substance attached such conditions that it was incredible that a shareholder would exercise the option in any other way than the way intended by the corporation, namely, a capitalization of the funds (Matter of Taylor, supra, p. 931). In the cases where such a distribution was determined to be income, it was clear that the company did in fact intend to distribute its accumulated profits as dividends and that it merely offered to any shareholder who desired it the opportunity of *208 increasing Ms holdings in the company (Matter of Malam [1894] 3 Ch. 578, 586). In such cases, however, where the trustee receives the new •shares of stock 'and thereafter sells them, the income beneficiary has merely a lien upon the stocks for the amount of the dividend, any balance being allocated to capital (29 Halsbury’s Laws of England [2d ed.], p. 650).
In the present case it seems clear, especially in view of the provisions of the Internal Revenue Code, that the companies did in fact intend to distribute earnings as dividends to shareholders and were not merely capitalizing earnings. Under English law, therefore, the income beneficiary would be entitled to the dividends. The trustee turned over the dividends to the income beneficiary. It is not made to appear that the shares so delivered were worth more than the cash dividend that might have been received in place of them.
The objections of 'the special guardian are therefore overruled.
In their prayer for relief, the trustees ask the court to direct distribution of one half the trust shares in accordance with the terms of the will. This request is not amplified in the petition and appears to present no specific question for determination.
Submit decree on notice settling the account accordingly.