THE EQUITABLE TRUST COMPANY OF NEW YORK, as
Trustee under a Deed of Trust of JOHN D. ROCKE-
FELLER, Respondent, v. ALTA R. PRENTICE, Appellant,
and MARY A. PRENTICE et al., Respondents, Impleaded
with Others.

(Argued November 21, 1928; decided December 31, 1928.)

2

·˙ *H. A. Cushing* for appellant. The effect of section 16 of the Personal Property Law requires the reversal of the judgment. (*Pray* v. *Hegeman*, 92 N. Y. 508; *Matter of Rogers*, 22 App. Div. 428; *Matter of Osborne*, 209 N. Y. 450; *Matter of Megrue*, 170 App. Div. 653; 224 N. Y. 284; *Matter of Schaefer*, 178 App. Div. 117; *Barbour* v. *De Forest*, 95 N. Y. 13; *St. John* v. *Andrews Institute*, 191 N. Y. 254; *Matter of Van Doren*, 137 N. Y. Supp. 420; *Matter of Robinson*, 145 App. Div. 925; *Hill* v. *Guaranty Trust Co.*, 163 App. Div. 374; *Matter of Hayden*, 77 Hun, 219.) The effect of section 17-a of the Personal Property Law does not justify an affirmance of the judgment. (*Metcalfe* v. *Union Trust Co.*, 181 N. Y. 39; *Brearly School* v. *Ward*, 201 N. Y. 358.) The economic theory of stock dividends provides no basis for affirming the judgment. (*Sturgis* v. *Roche*, 247 N. Y. 585; *Bourne* v. *Bourne*, 209 App. Div. 419; 240 N. Y. 172; *Matter of Bird*, 213 App. Div. 303.)

*Winthrop W. Aldrich* and *Harrison Tweed* for plaintiff, respondent. This court has recognized the real nature of a stock dividend; that a stock dividend does not constitute income because it effects no distribution of the earnings of the corporation to the stockholder and because the dividend shares represent purely a capital interest. (*Towne* v. *Eisner*, 245 U. S. 418; *Eisner* v. *Macomber*, 252 U. S. 189; *Marr* v. *United States*, 268 U. S. 536.) The dicta in the New York decisions which are claimed to suggest that the allocation of a stock dividend to principal may constitute an unlawful accumulation of income were made without reasoned consideration, are inconsistent with the recognition by the New York courts of the real nature of a stock dividend and, correctly understood, do not convey any such suggestion. (*Matter of Rogers*, 22 App. Div. 428; *Matter of Osborne*, 209 N. Y. 450; *Matter of Megrue*, 224 N. Y. 284; *Matter of Schaefer*, 178 App. Div. 117; 222 N. Y. 533; *Bourne* v. *Bourne*, 240 N. Y. 172.) The decisions whereby when the trust agreement is silent as to the allocation of a stock dividend, shares so received by a trustee are, under certain circumstances, to be allocated to the life beneficiary, are not inconsistent with a recognition of the real nature of a stock dividend. (*Matter of Osborne*, 209 N. Y. 450; *Bourne* v. *Bourne*, 240 N. Y. 172.)

*William D. Stiger* for Mary A. Prentice et al., defendants, respondents. As the intention of the settlor here is clear, if his direction is not against the statutes of New York, the Osborne rule will not prevent carrying out his intention. (*Matter of Osborne*, 209 N. Y. 450; *Bourne* v. *Bourne*, 209 App. Div. 419; 240 N. Y. 172; *U. S. Trust Co.* v. *Heye*, 224 N. Y. 242; *Matter of Megrue*, 224 N. Y. 284; *Robertson* v. *De Brulatour*, 188 N. Y. 301; *Equitable Life Assurance Society* v. *Un. Pac. R. R. Co.*, 212 N. Y. 360; *People ex rel. Clark* v. *Gilchrist*, 243 N. Y. 173.) The provisions of the trust deed that " the

trustees with the consent of the committee shall have power to determine all questions whether any moneys, securities, properties, stock dividends, rights or other things are to be treated as capital or income " should be construed broadly to give the trustee acting with the committee full discretion within the limits set by the principles of equity and our statutory law. (*Matter of Osborne*, 209 N. Y. 450; *Matter of Rogers*, 22 App. Div. 428; 161 N. Y. 108; *Carrier* v. *Carrier*, 226 N. Y. 114.) The rule for the allocation of stock dividends between life tenant and remainderman established by *Matter of Osborne* (209 N. Y. 450), as limited and qualified by later cases (notably by *United States Trust Company* v. *Heye*, 224 N. Y. 242), does not prevent an increase of the corpus of the trust fund. (*Macy* v. *Ladd*, 227 N. Y. 670; *Bourne* v. *Bourne*, 209 App. Div. 419; 240 N. Y. 172; *Baker* v. *Thompson*, 181 App. Div. 469; 224 N. Y. 592; *Thayer* v. *Burr*, 201 N: Y. 155; *Matter of Bemis*, 123 Misc. Rep. 255; *Matter of Schley*, 202 App. Div. 169; 234 N. Y. 616.) As a true stock dividend is in law and in economics a subdivision of capital assets, and not a distribution of income, it may be added to corpus, if the trust deed so directs, without infringing the Osborne rule. (*Matter of Rogers*, 22 App. Div. 428; 161 N. Y. 108; *Chester* v. *Buffalo Car Manufacturing Co.*, 70 App. Div. 443; *Eisner* v. *Macomber*, 252 U. S. 189; *Gibbons* v. *Mahon*, 136 U. S. 549.) A true stock dividend may be added to the corpus, if the trust deed so directs, without infringing section 16 of the Personal Property Law. (*Rolfe* v. *Hewitt*, 227 N. Y. 486; *Chester* v. *Buffalo Car Mfg. Co.*, 70 App. Div. 443; 94 App. Div. 612; 183 N. Y. 425; *Matter of Rogers*, 22 App. Div. 428; 161 N. Y. 108; *Clarkson* v. *Clarkson*, 18 Barb. 646; *Thayer* v. *Burr*, 201 N. Y. 155.) The amendment of the Statute of Accumulations in 1922 was declaratory and did not change the public policy of the State in cases of true stock dividends. (*Matter of Megrue*, 224 N. Y. 284; *Goldsmith* v. *Swift*,

25 Hun, 201; *Riggs* v. *Cragg*, 26 Hun, 89; *Clarkson* v. *Clarkson*, 18 Barb. 646; *People ex rel. Clark* v. *Gilchrist*, 243 N. Y. 173.)

*Thomas M. Debevoise* and *Eugene Congleton* for Rockefeller Foundation et al., defendants, respondents. The determination by the trustee, with the consent of the committee, that the stock dividends of the Standard Oil Company of Indiana shall be principal of the trust fund, will not violate the provisions of section 16 of the Personal Property Law of this State. (*Towne* v. *Eisner*, 245 U. S. 418; *Eisner* v. *Macomber*, 252 U. S. 189; *People ex rel. Clark* v. *Gilchrist*, 243 N. Y. 173.) Section 16 of the Personal Property Law was never intended to have any application to stock dividends, and the words of section 10 of the Personal Property Law properly construed show clearly that stock dividends are not income as that term is employed in section 16. (*Edison El. Illuminating Co.* v. *Frick*, 221 N. Y. 1; *Bridge Proprietors* v. *Hoboken Co.*, 68 U. S. 116; *McKee* v. *United States*, 164 U. S. 287; *Brewer* v. *Blougher*, 14 Pet. 178; *People ex rel. Clark* v. *Gilchrist*, 243 N. Y. 173; *Matter of Bronson*, 150 N. Y. 1; *Eisner* v. *Macomber*, 252 U. S. 189; *People* v. *Board of Supervisors*, 16 N. Y. 424; *Farmers Bank* v. *Hale*, 59 N. Y. 53.) The courts of this State have repudiated the doctrine that income to the corporation is income to the stockholder. Inasmuch as a stock dividend does not change the stockholder's interest in the corporate property, it cannot be income within the provisions of the statute against accumulations. (*Matter of Osborne*, 209 N. Y. 450; *Earp's Appeal*, 28 Penn. St. 368; *Bryan* v. *Knickerbocker*, 1 Barb. Ch. 409; *Hewitt* v. *Green*, 77 N. J. Eq. 345; *Ballantine* v. *Young*, 79 N. J. Eq. 70; *Matter of Rogers*, 22 App. Div. 428; 161 N. Y. 108; *Matter of Kernochan*, 104 N. Y. 618; *Robertson* v. *DeBrulatour*, 188 N. Y. 301; *Richmond* v. *Richmond*, 123 App. Div. 117; 196 N. Y. 535; *Baker* v. *Thompson*, 181 App.

Div. 469; 224 N. Y. 592; *Matter of U. S. Trust Co.* v. *Heye,* 224 N. Y. 242.)

*Everett Colby* and *Dallas S. Townsend* for John D. Rockefeller, Jr., et al., defendants, respondents. Section 16 of the Personal Property Law does not require that the intention of the grantor be defeated. These shares were delivered to the trustee as evidence of capital interest, not earnings; they were principal, not income; and the Appellate Division correctly held that the treatment of them as principal, admittedly intended by the grantor, would not violate section 16 of the Personal Property Law. (*Matter of Kernochan,* 104 N. Y. 618; *Sproule* v. *Bouch,* L. R. [29 Ch. D.] 635; *Matter of Rogers,* 22 App. Div. 428; 161 N. Y. 108; *Matter of U. S. Trust Co.* v. *Heye,* 224 N. Y. 242; *Bourne* v. *Bourne,* 209 App. Div. 419; 240 N. Y. 172; *People ex rel. Clark* v. *Gilchrist,* 243 N. Y. 173; *Lamb* v. *Lehmann,* 110 Ohio St. 59; *Gibbons* v. *Mahon,* 136 U. S. 549; *Towne* v. *Eisner,* 245 U. S. 418.) The rule laid down by this court in *Matter of Osborne* (209 N. Y. 450) does not require that this intention of the grantor be defeated by the treatment of these shares as income, and the Appellate Division correctly held that *Matter of Osborne* does not apply to this case. (*Matter of United States Trust Co.* v. *Heye,* 224 N. Y. 242; *Equitable Life Assurance Society* v. *Union Pacific Railroad Co.,* 212 N. Y. 360.)

*John W. Davis, D. F. McPherson, George W. Jaques* and *James F. Oates, Jr.,* for Edith R. McCormick, *amicus curiæ.* This case falls squarely within the New York rule, established by the *Osborne* case. Portions of these dividends were income, and could not be lawfully accumulated. (*Matter of Megrue,* 170 App. Div. 653; 217 N. Y. 623; *Matter of United States Trust Co.* v. *Heye,* 224 N. Y. 242; *Matter of Schaeffer,* 178 App. Div. 117; 222 N. Y. 533; *Bourne* v. *Bourne,* 240 N. Y. 172; *Matter of*

*Norton*, 129 Misc. Rep. 875.) The settlor had no intention to authorize unlawful accumulations; if he had the *Osborne* case prohibits fulfillment of such intention. (*Matter of Megrue*, 170 App. Div. 653; 217 N. Y. 623; 181 App. Div. 747; 224 N. Y. 28.) The law of the *Osborne* case as a rule of property laid down by this court and affirmed by the Legislature of New York must control this case. (*City of Buffalo* v. *Erie R. R. Co.*, 83 Misc. Rep. 144; *Starke Belknap* v. *New York Central R. R. Co.*, 197 App. Div. 249; 234 N. Y. 630; *Jefferson* v. *Bangs*, 124 App. Div. 916; 197 N. Y. 35; *Grifenhagen* v. *Ordway*, 218 N. Y. 451; *Northwestern Portland Cement Co.* v. *Atlantic Portland Cement Co.*, 174 Cal. 308; *Alsman* v. *Walters*, 184 Ind. 565; *Ewell* v. *Sneed*, 136 Tenn. 602; *Sacramento Bank* v. *Alcorn*, 121 Cal. 379.)

*Hugo Kohlmann* and *Henry A. Stickney* for Curtis, Malht-Prevost, Colt & Mosle, *amicus curiœ*.

CARDOZO, Ch. J.   A deed of trust, made in 1917, gave the net income of shares of stock to stated beneficiaries with remainders over. By its terms, the trustee was to have the privilege, acting with the consent of others, to allocate stock dividends to capital rather than to income. This privilege was exercised. There is no question that the allocation would be lawful if the trust had been created in 1922 or later (Pers. Prop. Law [Cons. Laws, chap. 41], §§ 10 and 17-a, as amended by L. 1922, ch. 452, and L. 1926, ch. 843). The question is whether it is to be condemned as an unlawful accumulation under a trust previously founded.

The rule in this State was settled, until changed in 1926 as to subsequent trusts by an amendment of the statute (L. 1926, ch. 843, amending Pers. Prop. Law, § 17-a), that as between life beneficiary and remainderman a stock dividend would be reckoned as principal or income according to the origin of the surplus out of which it was declared. To the extent that it distributed a surplus existing at the

creation of the trust, it would be allocated to principal; to the extent that it distributed a surplus earned thereafter, it would be allocated to income (*Matter of Osborne*, 209 N. Y. 450; *U. S. Trust Co.* v. *Heye*, 224 N. Y. 242; *Macy* v. *Ladd*, 227 N. Y. 670; *Bourne* v. *Bourne*, 240 N. Y. 172; *Matter of Bird*, 241 N. Y. 184; *Sturgis* v. *Roche*, 247 N. Y. 585). The search in all these cases was to find the intention of the founder of the trust and then to give effect to it. What is income for a corporation may not be income for a shareholder (*People ex rel. Clark* v. *Gilchrist*, 243 N. Y. 173, 182). What is principal for a shareholder, when taken in his own right, may be income when held in trust to be divided among others. So at least the cases hold. The thought back of them is this: A surplus in the treasury of a corporation, even though not income for the shareholder, is potentially a fund that may be converted into income. The declaration of a stock dividend destroys this potential income, and turns the surplus into capital. The effect may be at times to thwart the plan of apportionment between life tenant and remainderman as conceived at the foundation. A founder of a trust has conveyed shares to a trustee to pay the income to wife or child for life with remainder upon death to others. Did he mean in thus apportioning his estate that potential income might be cut down through the vote of the corporate managers so that the beneficiary never could resort to it, and principal increased to the profit of remaindermen, perhaps unknown or unborn? We have thought that intention would be best promoted if the fund thus permanently diverted were included in a gift of income. Very likely the word "dividend" has had a part in shaping the conclusion, for in their typical or common form dividends are income like other recurrent gains (*Lynch* v. *Hornby*, 247 U. S. 339, 344), and one slips readily into the assumption that the equivalence is absolute. Confusion of the sign with the thing most typically signified is not impossible for judges, much less

for founders of a trust. Even so, an appraisal of intention by which stock dividends, either wholly or in part, are classified as income, has met with stout resistance from courts of high authority. The Supreme Court of the United States and the courts of Massachusetts and England allot such dividends to principal (*Gibbons* v. *Mahon*, 136 U. S. 549; *Minot* v. *Paine*, 99 Mass. 101; *Barton's Trust*, L. R. 5 Eq. 238, 243). In the view of those courts, a stock dividend may be likened to a mere exchange of coins (*Towne* v. *Eisner*, 245 U. S. 418, 426). The life tenant is not aggrieved though an indirect effect of the exchange is to destroy the possibility of income in the future. Such changes are inherent in the nature of the gift. If the donor had in mind that income for the life tenant should have a secondary meaning alien to its primary one, he should have said so in his deed or will.

We have no thought to revive a controversy so inveterate by debating these conflicting views. All that concerns us now is to remember that the decisive test was not one of legality; it was one of presumable intention. Some of the earlier cases went upon the theory that the whole dividend should go to income (*McLouth* v. *Hunt*, 154 N. Y. 179; *Lowry* v. *F. L. & T. Co.*, 172 N. Y. 137, 143; *Robertson* v. *DeBrulatour*, 188 N. Y. 301, 311). The notion of an illegal accumulation could not have dictated those decisions, for the surplus may have been earned before the trust was set up. What was accomplished by *Matter of Osborne (supra)* was a modification of the rule in the interest of remaindermen. Every one assumed in that case that the stock dividend, if earned after the foundation of the trust, would be classified as income. The only question was whether an exception should be introduced in respect of surplus earned before. We held that in determining the presumable intention of the founder the line of division was to be drawn at the date of the foundation (cf. *Lowry* v. *F. L. & T. Co., supra; Robertson* v. *DeBrulatour, supra;* Thompson on Corpora-

tions [3d ed.], vol. 7, § 5403; Perry on Trusts, vol. 2, § 544, p. 872).

If the decisive question in the earlier cases was the question of intention, the decisive one here is the question of legality. So far as intention is concerned, the founder has said that a stock dividend shall be principal, if the trustee shall so declare. The only doubt is whether a rule of law stands in the way of his desire. The rule against accumulations in this State goes back to the Revised Statutes. For the benefit of minors, "an accumulation of the interest money, the produce of stock or other income or profits arising from personal property, may be directed," to continue not longer than the term of the minority (R. S. part II, chap. IV, title 4, § 3). "All directions for the accumulation of the interest, income or profit of personal property, other than such as are herein allowed, shall be void" (§ 4). Later revisions, though they have changed the verbiage of this restriction, have not worked a change of substance (Pers. Prop. Law, §§ 10, 16). Does the founder of a trust "direct" an illegal accumulation within the meaning of these statutes when he provides that a stock dividend, made possible by earnings of the corporation after the trust has been created, may be allocated to principal?

We said a while ago that the declaration of such a dividend destroys potential income by turning surplus into capital. The act by which this is done is not an accumulation by the individual shareholder, who may have nothing to do with it. It is no more his act than a refusal by the directors to vote out surplus cash (*Matter of Kernochan*, 104 N. Y. 618). Still less is it an accumulation directed by the founder of the trust. The change is one fortuitously ensuing from the declaration of the will of others. We must assume in the light of past decisions that submission to this will defeats the purpose of the founder if the definition of income is not broadened in accommodation to the changed conditions. The conse-

quence does not follow as of course that submission is " direction " within the meaning of the statute. Some courts have thought in circumstances not dissimilar that the dividend is wholly income (*McLouth* v. *Hunt, supra*); some that it is part principal and part income (*Matter of Osborne, supra; Earp's Appeal*, 28 Penn. St. 368); some that it is wholly principal (*Gibbons* v. *Mahon, supra*). In the view of the Supreme Court, it is so essentially capital that a statute taxing it as income must be disregarded as unconstitutional (*Eisner* v. *Macomber*, 252 U. S. 189). Are we to view it as so essentially income that we must nullify as illegal a trust which disposes of it as capital? The truth indeed is that what is income in one relation may at times be principal in another. " Words," as we are told, " are flexible " (*Int. Stevedoring Co.* v. *Haverty*, 272 U. S. 50; *Towne* v. *Eisner*, 245 U. S. 418, 425; *Surace* v. *Danna*, 248 N. Y. 18, 21). " ' Income' like most other words has different meanings dependent upon the connection in which it is used and the result intended to be accomplished " (*Tax Commissioner* v. *Putnam*, 227 Mass. 522). The owner of stock or of land sells it at a profit. The law is settled that the profit is income for the tax gatherer (*Lynch* v. *Hornby*, 247 U. S. 339; *Hays* v. *Gauley Mt. Coal Co.*, 247 U. S. 189). Between life tenant and remainderman it is commonly an increment to principal (*U. S. Trust Co.* v. *Heye, supra*), though distinctions must be drawn between sales that are casual or occasional, and those regularly made in the operation of a business (*Tax Commissioner* v. *Putnam, supra*, at p. 529; Warren, Stock Dividend, 33 Harv. L. R. 885, 895). Here is the self-same return on the self-same investment, yet it is principal for one purpose and income for another. The rule as to subscription rights evinces the same contrast (*Baker* v. *Thompson*, 224 N. Y. 592; *U. S. Trust Co.* v. *Heye, supra*, at p. 262). A cash dividend by a going concern is income for the life tenant, though it be paid out of earnings that antedate the trust (*Matter of Kernochan*,

*supra*). A stock dividend, capitalizing surplus, to the extent that it is based upon such earnings, is an accretion to the principal (*Matter of Osborne, supra*).

There is thus a twilight zone. Some things are always ncome, such as accruing interest or rent. Some are always principal, such as farms or factories or dwellings, held without change of title as part of an original investment, or even shares of stock so held in the absence of a change of form. Some may be one or the other for this purpose or for that. Stock dividends in the true sense, *i. e.*, dividends capitalizing surplus as distinguished from those payable in the stock of a subsidiary (*People ex rel. Clark* v. *Gilchrist*, 243 N. Y. 173, 178; *U. S.* v. *Phellis*, 257 U. S. 156), have predominantly the quality of an increment to principal, though at times, in furtherance of intention, they have been classified as income. When a dividend is paid in cash, the ownership of the corporate assets is changed; the company owns less, and the shareholder owns more, or something essentially different, though its value be no greater. Upon the distribution of a stock dividend, ownership of the assets is precisely as it was. "A stock dividend does not distribute property, but simply dilutes the shares as they existed before" (*Williams* v. *W. U. Tel. Co.*, 93 N. Y. 162, 189). Whatever gain results to the shareholder from the division of his certificates is indirect and incidental, not extracted from the assets like the recurrent yield of an investment (*Lynch* v. *Hornby, supra*, p. 344; T. R. Powell, Income from Corporate Dividends, 35 Harv. L. Rev. 363, 366, 367; Warren, Stock Dividends, 33 id. 885). The law is now established in this court as elsewhere that for the purpose of taxation such a dividend is capital, whether the shareholder takes it in his own right or for the benefit of another (*People ex rel. Clark* v. *Gilchrist, supra*). There should be cogent evidence of intention to justify us in holding that for the purpose of another statute it is to be ranked as something else.

Dicta are quoted in support of the contention that to allocate such a dividend to capital is to accumulate unlawfully (*Matter of Osborne, supra,* at p. 475; *Matter of Megrue,* 224 N. Y. 284, 289). They are dicta and no more. Stock dividends were rare, if not unknown, when the Revised Statutes were enacted. There is no reason to believe that they were expressly within the thought of those who framed the prohibition. This is not to say of necessity that they are not within its implications. They will not be caught within the net, however, unless something in their essential nature has made them close of kin to the game for which the net was spread. Scrutiny of their essential nature reveals not kinship, but diversity. Predominantly, as we have seen, they are not increments to income, but subdivisions of the principal. The quality that is typical must determine whether they are permitted or forbidden. Doubts, when nicely balanced, are resolved in favor of legality.

The decision of this appeal is unaffected by the amendments of the statute in 1922 and 1926. The first (L. 1922, ch. 452) makes provision to the effect that thereafter a founder of a trust may direct that stock dividends be added to the principal, and that no unlawful accumulation shall result therefrom. This was a precautionary measure, to guard against the acceptance of dicta to the contrary. The second (L. 1926, ch. 843) prescribes a new presumption as to trusts thereafter founded. For trusts then in being, the presumable intention is to allocate the dividend to the income, or, more accurately, to apportion it under the rule already stated. For trusts subject to the statute, the presumable intention is to add the dividend to principal. In the one case as in the other the presumption may be reversed by the declaration of the founder.

The judgments should be affirmed, with costs payable out of the fund, and the question certified answered " yes."

POUND, CRANE, ANDREWS, LEHMAN, KELLOGG and O'BRIEN, JJ., concur.

Judgments affirmed, etc.