Chief Judge Conway
(dissenting). By indenture dated September 7, 1915 Oliver H. Payne set up a trust for the benefit of William Bingham, II, measured by two lives in being. Under the provisions of the indenture, the trustee was to apply the ‘ ‘ rents, issues, profits and income ’ ’ of the trust fund to the use of the life beneficiary. The trust terminated on February 17, 1955 when the income beneficiary died. The trust having come to an end and the distribution of the corpus thereof having become necessary, the present proceeding was commenced under article 79 of the Civil Practice Act by the trustee, the United States Trust Company of New York, for a settlement of its final account and first supplemental account thereto.
During the life of the trust two extraordinary stock distributions were received by the trustee, one from the Standard Oil Company (Indiana), and the second from Borg-Warner Corporation. Special Term settled the final and first supplemental accounts, but expressly reserved for subsequent decision and settlement the proper allocation, between corpus and income, of those extraordinary stock distributions. Thereafter, objections were filed to the accounts, and the trustee’s proposed apportionment of the dividends was attacked. The objections were dismissed by Special Term, except for the question of whether certain items had properly been deemed capital surplus in trust contemplation. As to that question a reference was ordered, with the distribution of the shares, contingent upon the reference, held in abeyance pending it. On appeal, the *14 Appellate Division modified by striking the provisions for the reference and ordering the shares held in abeyance to be distributed according to the formula of the trustee. It is that determination which we are here asked to review.
As long ago as 1915 it was said that the question as to whether stock dividends are to be treated as income (belonging to the life tenant) or as corpus (belonging to the remainderman) ‘ ‘ has perplexed the courts of both this country and England for a century.” (7 R. C. L., § 266, p. 289.) And, in an annotation appearing in the 1908 volume of L. R. A. (N. S.), the following comment was made concerning this problem: ‘ ‘ Few legal questions present greater intrinsic difficulties, or have called forth a greater contrariety of views and opinions, as well as of practical results * * (12 L. R. A. [N. S.], p. 769.) The passage of time has not served to eliminate or lessen the difficulties.
It goes without saying that whether in a particular case a stock dividend made by a corporation during the term of a life estate belongs to the life tenant or the remainderman, that is, is to be regarded as income or principal, is primarily a question of the settlor’s intention as manifested in the instrument by which, the trust was created. ‘ ‘ This is expressly or impliedly recognized by all of the cases on the subject.” (12 L. R. A. [N. S.], p. 769; see, also, 18 C. J. S., Corporations, § 471, p. 1123.) In the great majority of cases, however, the language of the will or of the trust instrument merely directs the payment of ‘[1] earnings ”, ‘ ‘ income ” or “ dividends ’ ’, or, as here, “rents, issues, profits and income”, to the life tenant. Such terms are not sufficiently explicit to enable the courts to ascertain the settlor’s intention concerning the distribution of stock dividends. The absence in the will or trust instrument of language disclosing the trustor’s intention concerning the ownership of stock dividends has resulted in the expression of wide and irreconcilable differences of opinion in this area (see 18 C. J. S., Corporations, § 471, p. 1123).
Notwithstanding the divergence of views, the courts are generally agreed that a dividend which is not a distribution of earnings, but of capital assets of the corporation, belongs to the remainderman and that any dividend derived from a mere *15 enhancement of the value of capital assets belongs to the remainderman and not to the life tenant (18 0. J. S., Corporations, § 471, p. 1125; see, also, 14 C. J., Corporations, § 1257, pp. 829, 830).
With respect to the distribution of stock dividends representing earnings, as distinguished from capital assets, most jurisdictions follow one of three divergent rules, the so-called Kentucky rule, Massachusetts rule and Pennsylvania rule.
The Kentucky rule, in substance, is that in the absence of a manifested contrary intent by the trustor, a dividend declared out of earnings, whether' of stock or cash, ordinary or extraordinary, and regardless of the time that the fund from which the dividend is made was earned, goes in its entirety to the one entitled to the income at the time the dividend is declared (18 C. J. S., Corporations, § 471, subd. d, p. 1136; Hite’s Devisees v. Hite’s Executor, 93 Ky. 257).
Under the Massachusetts rule all stock dividends are considered capital going to the remainderman while all cash or property dividends, ordinary or extraordinary, are considered income belonging to the life tenant (18 C. J. S., Corporations, § 471, subd. b, p. 1126). This rule is predicated on the theory that there is an actual severance of the subject matter of the dividend from the corporate assets where cash and property dividends are involved, but that stock dividends involve only readjustments of the corporate structure, the corporate assets remaining the property of the corporation as fully as they were before (Minot v. Paine, 99 Mass. 101).
The Pennsylvania rule, or apportionment rule, as it is otherwise described, in essence, is that whether an extraordinary cash dividend or stock dividend declared during the term of the trust is to be considered as income belonging to the life tenant, or as capital belonging to the remainderman, is to be determined by the time, with relation to the commencement of the life term, when the fund out of which the dividend is declared accumulated. If the dividend is declared from earnings which accrued before the trust began, it is awarded to corpus; if it is declared from earnings which accrued thereafter, it is awarded to income; and, if it is declared from earnings some of which accrued prior to the commencement of the life of the trust and some of which *16 accrued subsequent thereto, the dividend is to be apportioned accordingly (18 C. J. S., Corporations, § 471, subd. c, p. 1129; Earp’s Appeal, 28 Pa. 368).
The Supreme Court of Missouri has succinctly summed up the three rules as follows (Hayes v. St. Louis Union Trust Co., 317 Mo. 1028, 1043): “ The three doctrines may be summed up by saying the Massachusetts rule considers the character of the dividend, the Pennsylvania rule the source of the dividend, and the Kentucky rule the time of the dividend.” (Emphasis in original.)
Oddly enough, New York, during different periods, has followed all three rules. Prior to 1913 the Kentucky rule was in force in this State (Matter of Kernochan, 104 N. Y. 618). In 1913 we adopted the Pennsylvania rule (Matter of Osborne, 209 N. Y. 450; Ann. 50 L. R A. [N. S.] 510). Finally, in 1926 the Legislature amended section 17-a of the Personal Property Law, which amendment embodies the Massachusetts rule. By its terms the amendment applies only to trusts created subsequent to 1926. Inasmuch as the trust here came into being in 1915 while the Pennsylvania-Osborne rule was in force, it is that rule which must be applied and the parties have accepted the applicability of that rule. That being so, a more detailed consideration of the Pennsylvania rule is called for.
Judge Fuld properly points out that the parties herein have accepted the applicability of the Osborne rule, and that thus our sole task is to determine whether that rule requires an allocation of the shares of stock different from that proposed by the trustee. The parties, of necessity, accepted the Osborne rule as formulated by our court and as used by all the courts of our State. (See Pratt v. Ladd, 253 N. Y. 213.) So settled was the rule thought to be that no appeal of the identical issue present herein was even argued in our court in the Pratt case. Moreover, in Equitable Trust Co. v. Prentice (250 N. Y. 1), Chief Judge Cabdozo undertook to explain the Osborne rule (see quotation, infra). Finally, the Legislature in 1926 changed the Osborne rule by statute, but did not purport to make the provision retroactive. We construed it (Personal Property Law, § 17-a) to be prospective only. (Equitable Trust Co. v. Prentice, supra.) Under the Osborne rule, the shares of stock are not *17 treated as the corpus of the trust. Bather, the value of the stock at the date of the inception of the trust is so treated. This value is described as the intact value. ‘‘ It is so named because that value is to be kept intact for the remaindermen in the various subsequent distributions of income that might impair it.” (Waterhouse’s Estate, 308 Pa. 422, 427; emphasis in original.) In Matter of Osborne, the intact value formula, which implements the Pennsylvania apportionment rule, was stated thus (209 N. Y. 450, 485):
“ The method of accomplishing this result [maintaining corpus intact in the face of extraordinary dividends] is not difficult. The intrinsic value of the 'trust investment is to be ascertained by dividing the capital and the surplus of the corporation existing at the time of the creation of the trust by the number of shares of the corporation then outstanding, which gives the value of each share, and that amount must be multiplied by the number of shares held in the trust. The value of the investment represented by the original shares after the dividend has been made is ascertained by exactly the same method. The difference between the two shows the impairment of the corpus of the trust * * * If the dividend is in stock the amount of impairment in money must be divided by the intrinsic value of a share of the new stock, and the quotient gives the number of shares to be retained to make the impairment good — the remaining shares going to the life beneficiary. Market value, good will and like considerations cannot be considered in apportioning a dividend.” (Emphasis added.)
As will be seen the intrinsic value, or the value to be kept intact, is book value, rather than market or any other value.
The intact value formula is succinctly explained in 130 A. L. B. (p. 544) as follows: “ * * * it involves a comparison of the book or intrinsic value of each share of stock as of the commencement of the life interest in the trust (determined by dividing the total capital and surplus accumulated at that time by the total number of shares of the corporation then outstanding) with the book or intrinsic value of each share after the dividend (determined by dividing the total of capital and surplus as it then stands by the original number of shares if the dividend is declared in cash, and by the total number of shares, new and *18 old, if the dividend is in stock). If, upon such comparison it appears that the book or intrinsic value of each share after the dividend equals or exceeds its book value as of the commencement of the life interest in respect of the stock on which the dividend is declared, there is no impairment of ‘ intact ’ value, and the entire dividend goes to income; if the book or intrinsic value of each share after the dividend is less than at the time the original shares became subject to the life interest, the difference multiplied by the number of shares owned by the trust before the dividend shows the amount of an extraordinary cash dividend that must be awarded to corpus in order to .preserve intact value. If the dividend is a stock dividend so many of the new shares must be allotted to corpus as will make the total number of shares, old and new, retained by the trust at their new reduced book or intrinsic value, equal to the book value of the original shares as of the commencement of the life interest in respect of them.”
The Pennsylvania-Osborne rule is based on the presumption that the creator of the trust intended to confer every benefit upon the income beneficiary (since the life beneficiary is normally the principal object of the creator’s bounty) and to give to the remainderman only that value which at the death of the creator was legally or equitably represented by the stock. In discussing the cases applying the Pennsylvania-Osborne rule, Chief Judge Cardozo pointed up this concept of 1 ‘ presumable intention ” in the case of Equitable Trust Co. v. Prentice (250 N. YU. 1, supra) where he said (p. 8): “ The thought back of them is this: A surplus in the treasury of a corporation, even though not income for the shareholder, is potentially a fund that may be converted into income. The declaration of a stock dividend destroys this potential income, and turns the surplus into capital. The effect may be at times to thwart the plan of apportionment between life tenant and remainderman as conceived at the foundation. A founder of a trust has conveyed shares to a trustee to pay the income to a wife or child for life with remainder upon death to others. Did he mean in thus apportioning his estate that potential income might be cut down through the vote of the corporate managers so that the beneficiary never could resort to it, and principal increased to the profit of remainderman, perhaps unknown or unborn? We have *19 thought that intention would be best promoted if the fund thus permanetly diverted were included in a gift of income.”
That, then, is the presumption upon which the Pennsylvania rule is based. Of course, the creator’s “ presumable intention ” cannot be effectuated until such time as the corporation declares a dividend. When it is declared, the courts are presented with the opportunity necessary to carry out the ‘ ‘ presumable intention.” The intact value formula is the means by which they do so.
There is one ramification to the Pennsylvania rule. That is, that the principal or corpus of the trust, i.e., the original book value of the shares, is not necessarily to remain static. Phrased differently, not every increase in the value of the trust estate is income. “ Any natural increase in the value of the trust estate remains principal. Gain by increment in capital valuation goes to principal.” (Matter of Hagen, 262 N. Y. 301, 305; see, also, United States Trust Co. v. Heye, 224 N. Y. 242.) Accordingly, as later cases disclosed, in applying the Osborne formula, increments to the book value after acquisition by the trust in the form of capital increases traceable to the original corpus must be added to the book value as it was at time of acquisition and the resulting value is the value to be kept intact.
With the foregoing principles in mind, we turn to the problem presented by the instant case.
It should be noted that the facts are not in issue, the parties having entered into a stipulation with respect thereto, including the accuracy of the facts contained in reports prepared by an accounting firm showing the adjustments in the capital, capital surplus and earned surplus of • the two corporations for the crucial periods.
Prior to December 1, 1954 the trustee held 26,500 shares of stock of Standard Oil Company (Indiana). On that date it received an additional 26,500 shares from the corporation. The distribution of these shares was'based upon a corporate resolution to the effect that “ a stock dividend of 100% on the capital stock of this company issued and outstanding, including treasury stock, be and hereby is declared payable out of capital surplus and the remainder out of earned surplus, on the 1st day of December, 1954 to stockholders of record at the close of business on the 25th day of October, 1954.” The distribution *20 eliminated $174,612,840 of “ Capital in excess of par value” and $231,133,569 of ‘ ‘ Earnings retained and invested in the business.”
Prior to January 12, 1955 the trustee held 4,100 shares of stock in Borg-Warner. On that date it received an additional 8,200 shares from the corporation. The distribution of these shares was based upon the stockholders’ approval and a corporate resolution to the effect that the corporate officers “ are authorized and directed to transfer from the corporation’s capital surplus account (designated on the books as ‘ Capital in excess of par value ’) to stated capital the total amount of capital surplus, including all paid-in-surplus * * * and to transfer from earned surplus (designated on the books as ‘ Earnings retained for use in the business ’) to stated capital the balance necessary to increase the stated capital by an amount equal to $5 times the number by which the issued common shares are increased as a result of the reclassification of shares ”. The corporation thereupon transferred from the capital surplus account to stated capital the sum of $21,340,734, and from the consolidated retained earnings account the sum of $4,061,354, to cover the 5,080,417 additional $5 par value shares issued.
As to the Standard Oil shares: In arriving at a proposed division of these shares between corpus and income, the trustee proceeded on the assumption that to the extent that the additional shares had been charged against or capitalized out of “ capital surplus ”, the distribution was a stock split (to which corpus was entitled without regard to any apportionment formula), not a stock dividend• (to be submitted to the application of the intact value formula). Since $174,612,840 of the total of $405,746,409 capitalized had been charged against capital surplus, the trustee concluded that 43.0350%, or 11,404.27 of the additional shares, represented a stock split and belonged to corpus. The trustee then applied the intact value formula and found no impairment of corpus, as a consequence of which it determined that the balance of 15,095.73 shares belonged to income.
As to the Borg-Warner shares: In arriving at a proposed division of these shares, the trustee proceeded on the same *21 assumption as in the case of the shares in Standard Oil, namely, that to the extent that the additional shares had been charged against or capitalized out of capital surplus, the distribution was a stock split, not a stock dividend. As $21,340,734 of the total of $25,402,088 capitalized has been charged against capital surplus, the trustee concluded that 84.0118%, or 6,888.97 of the additional shares, represented a stock split and belonged to corpus. The trustee then applied the intact value formula and found no impairment, as a consequence of which it determined that the balance of 1,311.03 shares belonged to income.
To restate, in brief form, the manner in which the trustee made its calculations: (1) it began with the assumption that, to the extent that the additional shares had been charged against ‘ ‘ capital surplus ’ ’, the distribution was a stock split rather than a stock dividend; (2) on the basis of that assumption the trustee immediately gave to corpus the prorata portion of the new shares charged by the corporation to its capital surplus; (3) it then applied the intact value rule, found no impairment of intact value, and, therefore, allocated the remaining shares to income.
Had the intact value formula been applied to the entire Standard Oil stock distribution of 26,500 shares, income would have received the entire distribution since the intact value (including capital increments) of such portion of the trust estate was not impaired by such distribution. As shown above under the trustee’s formula, corpus received 11,404.27 and income received 15,095.73 of the additional shares.
Had the intact value formula been applied to the entire Borg-Warner stock distribution of 8,200 shares, an impairment of intact value of the trust estate would have resulted. The impairment could be remedied by the addition of 4,463.9702 shares to corpus. The balance of 3,736.0298 shares would go to income. As shown above under the trustee’s formula, corpus received 6,888.97 shares and income received 1,311.03 of the additional shares.
Appended to this opinion is a detailed breakdown of the computations made by the trustee and by the objectants, as compiled in the brief amicus curice of a guardian ad litem of four infants interested in the estate of Harry Payne Bingham. The compila *22 tion is suostantially correct (as verified by the record, wherein the relevant figures are concededly correct) and is illustrative of what is written in this opinion.
The objectants-appellants argue that the intact value formula (which includes crediting corpus with capital increments) should have been applied to the entire Standard Oil and Borg-Warner stock distributions, with the results above indicated.
The crux of the controversy, then, is whether in determining the respective rights of income beneficiaries and remaindermen, a stock distribution, charged for corporate purposes in part against capital surplus and in part against earned surplus, (a) is a stock dividend — in which event objectants-appellants must prevail — or (b) is partially a stock split and partially a stock dividend in which event we must hold that the trustee applied the correct formula in allocating the stock.
In resolving the question we are obliged to concern ourselves with the substance of the transaction, not the form in which the corporation has seen fit to clothe it and not the name the corporation has chosen to confer upon it (Matter of Osborne, 209 N. Y. 450, 476, supra).
A stock dividend has been defined as one ‘ ‘ payable in the stock of the corporation declaring or authorizing the dividend ’ ’ and which ‘ ‘ merely evidences the transfer of an accumulated surplus to the capital account of the corporation” (4 White, Corporations [12th ed.], pp. 34-35); as a “dividend, capitalizing surplus ” (Equitable Trust Co. v. Prentice, supra); and, most recently, as a “ distribution of stock by a corporation to its stockholders evidencing and accompanied by the transfer of accumulated surplus to the corporation’s capital account * * * A stock split, on the other hand, results from the simple increase in the number of shares without altering surplus or segregating earnings ” (Matter of Fosdick, 4 N Y 2d 646, 653).
Undeniably the stock distributions made by Standard Oil and Borg-Warner were accompanied by transfers of accumulated surplus to the corporation’s capital accounts. Stated otherwise, the additional shares received by the trustee represented a capitalization of surplus, not merely, as in a stock split, a division of the previously owned shares into smaller components without any addition to the corporate capital. What gives *23 rise to the dispute here is the fact that each of the two corporations involved had, for corporate purposes, divided its surplus between two accounts, one designated “ capital surplus ” and the other designated 1 ‘ earned surplus ’ ’, and that when the stock dividends were declared the directors directed them to be charged on the corporate books in part against each of those two accounts. Bearing in mind that under the intact value formula, based on the creator’s presumable intention, corpus is entitled to the original book value, as increased by increments in capital valuation, and income is entitled to all else, it becomes plain that no distinction may be based upon the name of the account out of which the surplus has been drawn to capitalize the new shares of stock. Capital, capital surplus, and earned surplus are merely bookkeeping entries on the records of the corporation. They cannot govern the substantive rights of those interested in a trust. What is capital to the corporation may be income to the trust and what is income to an ordinary shareholder may be corpus to a trust shareholder (McLouth v. Hunt, 154 N. Y. 179; Robertson v. de Brulatour, 188 N. Y. 301; United States Trust Co. v. Heye, supra; Equitable Trust Co. v. Prentice, supra; Pratt v. Ladd, supra). A profit recorded by a corporation on its “capital surplus” account may, for example, have resulted from what was originally an investment of earnings (earned after inception of the trust’s interest), which makes such profit income to the trust regardless of the fact that for corporate purposes it may be treated as a capital profit and be recorded under the title “ capital surplus.” The same is true of any profit which the corporation has discretion to charge to any surplus, but which, in trust contemplation, must be deemed to accrue to the life tenant. On the other hand, part of the “ earned surplus ” account reflected on the corporation’s boohs may be earnings that accrued prior to the inception of the trust, which, under the intact value rule, renders them corpus to the trust though they are obviously earned surplus to the corporation. What all of this means is that corporate names are an unreliable guide to the determination of the respective rights of the life tenant and remaindermen.
We would point up a further reason why the capital surplus, as recorded on the corporate books, is not automatically representative of the capital increments to which a trust corpus is *24 entitled. The trustee contends that it is, of course — its assumption being that, because the corporation debits capital surplus on its books, it is giving out capital profits via the stock dividend. Such assumption ignores the nature of a dividend in shares (as opposed to one in cash or bonds or property). The corporation is giving out no particular portion of its assets; it is giving out prorata interests in all of its assets: stated capital, capital surplus and earned surplus. No matter what is charged on the books, the only things distributed are aliquot shares in everything on the books.
Undoubtedly, the unimportance of corporate labels is more readily apparent where the corporation has but one surplus account. For example, in this case if the corporations had placed all of their surplus into an account entitled “ earned surplus ’ ’ no one could deny the application of the intact value formula to the entire dividend. It was not until about 1920 that for corporate accounting purposes separate accounts were established designated as “ capital surplus ” and as “ earned surplus.” Prior to that time all increase, whether derived from capital profits or from ordinary earnings, was shown in a single ‘ ‘ surplus ’ ’ account or in a “ profit and loss ’ ’ account. Consequently, in the early cases where we were concerned with the apportionment of stock dividends the corporations involved had only one surplus account (which included both capital profits and ordinary earnings), and it was out of such a combined surplus account that the stock dividends were capitalized. Nevertheless, we at no time suggested that the stock dividends should be allocated to corpus to the extent that they may have been capitalized out of capital profits. The reason is clear. All that the remaindermen are entitled to is the original book value plus natural capital increments. The income beneficiary is entitled to everything else. Such is the Osborne rule. Whether the surplus is in one account, generally denominated ‘ ‘ surplus ’ ’, or in two accounts, denominated “ capital surplus ” and ‘ ‘ earned surplus ’ ’, the apportionment under the Osborne-intact-value formula must be made in the same way, with the same result on the respective property rights of the life beneficiary and of the remaindermen.
It appearing that the trustee erred in treating as a stock split so much of the stock distribution as was capitalized out of *25 capital surplus, and that the intact value formula must be applied to the entirety of the stock distribution, the order of the Appellate Division approving the trustee’s account should be reversed. Under the intact value formula the 26,500 shares of the Standard Oil Company (Indiana) should be allocated wholly to income and the 8,200 shares of Borg-Warner Corporation should be apportioned between corpus and income as follows: 4,463.9702 shares to the corpus to remedy the impairment brought about by the stock dividend and the remaining 3,736.0298 shares to income.
I note that objectants-appellants have filed three notices of appeal. The relief sought by all three of them is the same, namely, our review of the Appellate Division disposition effected in an order of that court dated November 22, 1957. By the first notice of appeal objectants-appellants appealed from that order; by the second notice of appeal objectants-appellants appealed from Special Term’s order on remittitur which carried out the order of the Appellate Division and, in addition, ordered a second supplemental account covering a period beyond that which was involved on the appeal to the Appellate Division and which, therefore, is beyond that involved on the appeal to this court; finally, by the third notice of appeal object-ants-appellants appealed from a still later order of Special Term which provided for final discharge of the trustee and approved the trustee’s second supplemental account. This proceeding was brought to settle the trustee’s final account and the first supplemental account to it. The Appellate Division order finally settled such accounts and, so, is the order properly appealed to this court (Civ. Prac. Act, § 591, subd. 2). As indicated above, that order should be reversed and the matter remitted to Special Term for further proceedings in accordance with the opinion herein. The appeals from the subsequent orders of Special Term, dated March 12,1958, and May 16,1958, are superfluous and should be dismissed.
Judges Desmond, Dye, Van Voorhis and Burke concur with Judge Fuld; Chief Judge Conway dissents in an opinion in which Judge Froessel concurs.
Order affirmed.